IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THERESIA COLLINS, | ) | Case No. 1:17-cv-0769 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT & RECOMMENDATION |
| | ) | |

## I.    Introduction

Plaintiff, Theresia Collins, seeks judicial review of the final decision of the
Commissioner of Social Security denying her application for Disability Insurance Benefits under
Title II of the Social Security Act.  This matter is before the court pursuant to 42 U.S.C. §405(g),
42 U.S.C. §1383(c)(3) and Local Rule 72.2(b).

Because the ALJ did not support her decision by substantial evidence, I recommend that
the court VACATE the final decision of the commissioner and REMAND the matter for further
proceedings.

## II.    Procedural History

Collins applied for disability insurance benefits on April 24, 2014.  (Tr. 14, 154-160)
She alleged a December 3, 2013 disability onset date.  (Tr. 154)  Her application was denied
administratively.  Collins requested a hearing (Tr.118), and Administrative Law Judge ("ALJ")
Catherine Ma heard the case on March 9, 2016.  (Tr. 33-87)  The ALJ found that Collins was not
disabled in an August 25, 2016 decision.  (Tr. 11-28)  On February 14, 2017, the Appeals

Council denied further review, rendering the ALJ's conclusion the final decision of the commissioner.  (Tr. 1-5)  Collins filed this action on April 11, 2017 to challenge the commissioner's final decision.  ECF Doc. 1.

## III.    Evidence

### A.    Personal, Educational and Vocational Evidence

Collins was born on July 7, 1955 and was 60 years old when the administrative hearing took place.  (Tr. 41)  She has a high school education.  (Tr. 41)  She has previous work experience as an assembler or solderer at several manufacturing businesses.  (Tr. 44-47)

### B.    Medical Evidence

On May 11, 2010, Collins underwent an EMG of her upper extremities, which revealed bilateral carpal tunnel syndrome.[1]  (Tr. 714)  In 2013, x-rays showed "mild" arthritis in both hands. (Tr. 252)  Collins met with an orthopedic surgeon, Yuji Umeda, M.D., Ph.D., on December 19, 2013.  Collins reported severe pain exacerbated by daily activities.  She had night pain and dropped things.  (Tr. 248)  Examination of Collins's right hand showed moderate Tinel's sign, severe flexion compression over the carpal tunnel, and some decreased light touch sensation.  (Tr. 251) Motor examination of her thumb was normal.  Radial and ulnar tests were also normal.  Collins had full grip strength and full range of motion in her wrist and hand.  (Tr. 251-252)  Examination of her left hand showed moderate Tinel's sign and moderate flexion compression over the carpal tunnel in her left hand.  She had a slightly reduced thumb abduction but nerve testing was normal. She had full grip strength and normal range of motion in her left wrist and hand.  (Tr. 251-252) Dr. Umeda discussed treatment options with Collins including surgery, steroid injections and

---

[1] The parties dispute the relevance of this EMG study in this litigation.  Collins first submitted it to the Appeals Council, after the ALJ decided the case.  The commissioner argues that the court may not consider this study in this action, and objects to Collins's citation to the study.

physical/occupational therapy.  Collins declined steroid injections.  Dr. Umeda felt that she likely needed surgery.  (Tr. 252)

In 2000, Collins was diagnosed with diabetes mellitus and diabetic peripheral neuropathy. On February 27, 2013, podiatrist, Dr. Debra Thornton examined Collins and ordered x-rays of her feet.  Collins complained of foot pain and numbness in her toes.  (Tr. 277)  X-rays showed bilateral calcaneal spurs, bunions on both feet and mild degenerative joint disease of both feet.  (Tr. 277-278)  Dr. Thornton discussed surgery options with Collins.  (Tr. 279)

In May 2013, physical examination showed diminished vibratory sensation, decreased range of motion in her ankles, but normal muscle strength in her feet.  (Tr. 299)

On August 7, 2014, Collins complained of lower back pain for the past five months.  She said she could not stand for more than ten minutes.  She had slightly reduced range of motion in her knees and hips.  Collins was diagnosed with lumbago.  (Tr. 414)

On October 6, 2014, Physical Therapist Maria Soha evaluated Collins's functional capacity as limited by her carpal tunnel and lumbago.  (Tr. 422)  Collins was able to sit for 38 minutes and stand for 28 minutes and walk for 6 minutes before stopping due to pain.  (Tr. 422)  Her ability to use her hands for repetitive tasks was poor, as were her gross manipulation skills.  (Tr. 422-423) Collins scored below normal on the treadmill test, stair climb test, timed up and go test, functional rest test, squatting to ground test, and the heel-toe walking test.  (Tr. 428-429)  Ms. Soma's evaluation placed Collins at the sedentary physical demand level indicating that she could only occasionally lift 7.5-11 pounds.  (Tr. 422)

On October 13, 2014, Collins complained of pain in both shoulders.  She reported having difficulty lifting her arm above her shoulder.  (Tr. 546)  Physical examination showed limited range of motion at the right arm due to pain.  Dr. Sunny Lee prescribed pain medication and prescribed physical therapy.  (Tr. 547)  Collins received an epidural injection to her right shoulder

3

on December 30, 2014.  (Tr. 567)  The injection helped slightly for a couple of weeks until her symptoms returned.  (Tr. 580)

In March 2015, Collins underwent an MRI of her right shoulder showing rotator cuff tendinosis and small partial tear of the supraspinatous tendon.  (Tr. 593)

On April 13, 2015, Collins complained of cervical pain and clicking noises.  She was prescribed Cyclobenzaprine but told to use it sparingly.  She was also advised to undergo physical therapy.  (Tr. 593)

Collins went to the emergency room in August 2015 complaining of lower back, neck and shoulder pain.  (Tr. 460-475)  She was diagnosed with a urinary tract infection and left lumbar radiculopathy.  (Tr. 465)  On August 20, 2015, Collins followed up with Abrahim Syed, MD.  (Tr. 645)  Physical examination returned mostly normal results, but Collins had severely decreased range of motion and pain with movement in her right shoulder.  (Tr. 647)

### C.    Opinion Evidence

#### 1.    Treating Physician – Nana Kobaivanova, M.D., – November 2014

On November 6, 2014, Collins's treating physician, Dr. Nana Kobaivanova, completed a physical residual functional capacity questionnaire.  (Tr. 433-434)  She opined that Collins could lift less than 10 pounds; that she could sit, stand and/or walk for less than two hours during an 8 hour day; she could sit for 30 minutes before changing positions; she could stand for 20 minutes before changing positions; and would need to be able to shift positions at will.  (Tr. 433)  In support of these opinions, Dr. Kobaivanova wrote: "[p]atient has low back pain; leg pain; has diabetic neuropathy of legs; carpal tunnel both hands/wrists."  Dr. Kobaivanova also referred to the physical performance evaluation done by Ms. Soha.  (Tr. 434)  Dr. Kobaivanova felt that Collins was able to occasionally reach, including overhead; could never handle, finger, or feel;

and could push/pull less than occasionally. Dr. Kobaivanova anticipated that Collins would miss more than three days of work per month. (Tr. 434)

In April 2015, Dr. Kobaivanova wrote a letter stating that Collins "has been under my care for the past several years. She does have arthritis of neck, shoulders, and arms. This condition limits her activities of daily living as well as employment responsibilities." (Tr. 455)

On March 17, 2016, Dr. Kobaivanova completed another physical residual functional capacity questionnaire. (Tr. 457-458) Dr. Kobaivanova's opinions were slightly modified. For example she opined that Collins could only sit 20 minutes before needing to change positions. (Tr. 457) She felt that Collins might need to lie down during her work shift. She now felt that Collins could occasionally handle and could feel less than occasionally. Dr. Kobaivanova wrote that Collins "has neuropathy due to [diabetes mellitus]" and "carpal tunnel." (Tr. 458)

### 2. State Agency Consulting Physician – Dr. Dorothy Bradford – December 2014

Plaintiff underwent a physical examination by consultative examiner Dr. Dorothy Bradford on December 16, 2014. (Tr. 440-446) Physical examination findings were mostly normal, with no edema or varicosities noted in the extremities. (Tr. 445) Collins's upper extremities showed no misalignment, tenderness or masses. She had full range of motion and handclasp strength of 4/5. However, she had decreased sensation in the median nerve distribution and was positive for Tinel's and Phelan's signs. (Tr. 446) Collins had full range of motion in her lower extremities with normal stability, strength and tone. (Tr. 446) She displayed normal symmetrical reflexes. Dr. Bradford diagnosed moderate bilateral carpal tunnel syndrome causing decreased handclasp strength. (Tr. 446) X-rays ordered by Dr. Bradford showed slight spondylolisthesis of L4 on L5 and L5 on S1, but disc spaces were preserved. (Tr. 438)

### 3.    State Agency Reviewing Physicians

Paul Morton, M.D. reviewed plaintiff's records on June 6, 2014.  (Tr. 92-94)  Dr. Morton found that Collins could occasionally lift and/or carry 20 pounds; could frequently lift and or carry 10 pounds; could sit, stand, and/or walk about 6 hours in an 8 hour workday; that she was unlimited in her ability to push/pull; and did not have any postural limitations.  He felt that she had no limitations in reaching or feeling, but was limited in her ability to handle or finger.  (Tr. 94)

On December 26, 2014, James Cacchillo, D.O., reviewed Collins's records and affirmed Dr. Morton's opinions that Collins could occasionally lift and/or carry 20 pounds; could frequently lift and or carry 10 pounds; could sit, stand, and/or walk about 6 hours in an 8 hour workday; and that she was unlimited in her ability to push/pull.  (Tr. 104)  However, contrary to Dr. Morton's opinions, Dr. Cacchillo also found that Collins had postural limitations.  He opined that she could only frequently climb ramps and stairs, and stoop and that she could never climb ladders, ropes or scaffolds.  (Tr. 105)  Dr. Cacchillo also noted that Collins had moderate bilateral carpal tunnel syndrome that caused decreased handclasp.  (Tr. 105)

### D.    Relevant Testimonial Evidence
### 1.    Testimony of Collins

Collins testified at the hearing.  (Tr. 41-72)  She was 60 years old and lived in a house with her husband, her 28 year old daughter, and her 4 year old grandson.  She completed high school but did not have any additional education.  (Tr. 41)   Collins had a driver's license and was able to drive short distances.  (Tr. 42)

Collins had worked for several manufacturing companies.  (Tr. 46-51)  She last worked for a company that made cables and harnesses.  (Tr. 45)  She was required to sit the majority of the day and to lift between 10 and 15 pounds occasionally.  (Tr. 45-46)  She was laid off in

December 2013 (she believes in response to her filing of a workers' compensation claim) from that job and had not worked since. (Tr. 44)

Collins worked for several different companies doing the same job. All of the work she did was soldering or working with cables and harnesses. (Tr. 49-50) One of the jobs involved putting cables inside of computers. (Tr. 49) At that job, Collins was required to stand all day but no lifting was required because she was working on an assembly line. (Tr. 50)

Collins felt she could no longer work because of arthritis in her hands, back and neck, carpal tunnel syndrome, and swelling in her leg and feet. She dropped a lot of things. (Tr. 51) She had difficulty holding small objects; she could not grasp well. (Tr. 58-59) She took pain medication for lower back pain that traveled down her left side. (Tr. 51-53) She also had problems with her hands locking up. She first noticed this in 2009 and was later diagnosed with carpal tunnel syndrome. She went to therapy for both of her hands, wore braces, and took medication. (Tr. 54-55) She did not want surgery because she previously had a bad experience with surgery to remove a kidney. (Tr. 57) Collins also had swelling and numbness in her feet and regularly saw a doctor for diabetes. (Tr. 64)

Collins could go to the grocery store, cook, wash dishes and do laundry with some assistance from her husband. She no longer did vacuuming or yard work. (Tr. 61) Collins helped care for her grandson by listening to him and making sure he ate. She did not lift him because he was too big. (Tr. 63) She had difficulty buttoning. (Tr. 65) She could use the computer for short periods. (Tr. 65-66)

### 2. Testimony of Vocational Expert

Irmo Marini, a vocational expert ("VE"), also testified at the hearing. (Tr. 72-86) Dr. Marini considered Collins's past work to include working as an assembly solderer, which she performed at a sedentary level, and computer electronics assembler, which the *Dictionary of*

*Occupational Titles* classifies as light work, but Collins performed it at the medium level at times.  (Tr. 73-74)

The ALJ asked Dr. Marini to consider an individual of Collins's age, education and work experience who could perform a full range of light work; was able to frequently climb ramps and stairs; could never climb ladders, ropes, and scaffolds; could frequently stoop; and could frequently handle and finger with both hands.  (Tr. 74-75)  The VE opined that this individual would be able to perform Collins's past work as a computer assembler but not as she performed it.  (Tr. 75)  This individual would also be able to perform the jobs of counter clerk, theater usher, and office cleaner.  All of these jobs existed in significant numbers throughout the U.S. (Tr. 76)

The ALJ next asked the VE to consider the same hypothetical individual with the added limitation of only occasionally handling and fingering with both hands.  This individual would not be able to perform Collins's past work.  However, this individual would still be able to perform the jobs of counter clerk and theater usher.  This individual could also perform the job of children's attendant.  (Tr. 77)

Next, the ALJ asked the VE to consider an individual of claimant's age, education and work experience who could perform a full range of sedentary work and could frequently stoop and climb ramps and stairs, but could not climb ladders, ropes or scaffolds.  (Tr. 77)  The VE testified that this individual could perform the work of a call-out operator, a system surveillance monitor, and a telephone information clerk.  All of these jobs existed at significant numbers in the U.S.  (Tr. 79)  This individual could not perform Collins's past work as described in the DOT, but she could perform the job of assembly solderer as Collins had performed it.  (Tr. 80)

Finally, the ALJ asked the VE to consider the same hypothetical individual (limited to sedentary work) but the individual could only occasionally handle and finger with both hands.

8

This individual would not be able to perform Collins's past work.  This individual would be able to perform the job of call-out operator, but no other jobs would be available.  (Tr. 81)

## IV.     Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[2]….

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be paraphrased as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If

---

[2] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423 (d)(2)(A).

claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.R.F. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987).  Under this

sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v.*

*Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the commissioner

at Step Five to produce evidence that establishes whether the claimant has the RFC and

vocational factors to perform work available in the national economy.  *Id.*

## V.    The ALJ's Decision

The ALJ issued a decision on August 25, 2016 setting forth the following paraphrased

findings:

1. Collins met the insured status requirements through December 31, 2018.  (Tr. 16)

2. Collins had not engaged in substantial gainful activity since December 3, 2013, the alleged onset date.  (Tr. 16)

3. Collins had the following severe impairments: diabetes mellitus, carpal tunnel syndrome, essential hypertension, peripheral neuropathy, arthritis, and disorders of the back.  (Tr. 16)

4. Collins did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 18)

5. Collins had the residual functional capacity to perform light work except she could frequently climb ramps and stairs and stoop.   She was also limited to frequent bilateral handling and fingering.  She could never climb ladders, ropes or scaffolds.  (Tr. 19)

6. Collins was capable of performing past relevant work as a computer electronic assembler as classified by the DOT.  (Tr. 25)

Based on the foregoing, the ALJ determined that Collins had not been under a disability

from December 3, 2013 through the date of the ALJ's decision.  (Tr. 27)

**VI.** **Law & Analysis**

    **A.** **Standard of Review**

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the commissioner may not be reversed just because the record contains substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because the commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

The court also must determine whether the ALJ decided the case using the correct legal standards.  If not, reversal is required unless the legal error was harmless.  *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant whose application has been denied understands why.

**B.  Residual Functional Capacity**

**1.  Light Work Capability**

Collins argues that the ALJ erred in determining that she was capable of performing past relevant work as a computer electronics assembler.  ECF Doc. 17, Page ID# 858-860.  Collins contends that the ALJ's finding that she was capable of performing light work was not supported by substantial evidence.  She points to the fact that the ALJ rejected her treating physician's

opinion and relied on the opinions of the non-examining state agency physicians.  ECF Doc. 17, Page ID# 861.  Collins also argues that the ALJ improperly assessed her credibility.

An ALJ's residual functioning capacity ("RFC") determination is proper when it is based upon "all of the relevant medical and other evidence."  20 C.F.R. § 416.945 (a)(3).  At its most basic level, a claimant's RFC is simply an indication of [her] work-related abilities despite her limitations.  *See* 20 C.F.R. § 404.1545(a)(1).  The RCF is not a medical opinion, but an administrative determination reserved to the commissioner.  *See* 20 C.F.R. § 404.1527(e)(2).  Accordingly, the ALJ bears the responsibility for determining a claimant's RFC based on all of the relevant evidence.  *See* 20 C.F.R. § 404.1545(a)(3).

Here, the ALJ determined that Collins was capable of performing light work[3] except she could frequently climb ramps and stairs; she could never climb ladders, ropes and scaffolds; she could frequently stoop; and she could frequently handle and finger with both hands.  In making this finding, the ALJ rejected the opinion of Collins's treating physician, Dr. Kobaivanova and relied on the opinions of the state agency physicians.

## 2.    Treating Physician Rule[4]

The administrative regulations implementing the Social Security Act impose standards for weighing medical source evidence.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  In making disability determinations, an ALJ must evaluate the opinions of medical sources in

---

[3] 20 CFR § 404.1567(b) defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[4] 20 CFR §§ 416.927 applies to Collins's claim because she filed it before March 27, 2017.

accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013). The treating physician rule requires that "[a]n ALJ [] give the opinion of a treating source controlling weight if [s]he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

If the ALJ does not give the opinion controlling weight, then the opinion is still entitled to significant deference or weight that takes into account the length of the treatment and frequency of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist. 20 C.F.R. § 416.927(c)(2)-(6). The ALJ is not required to explain how she considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); see also *Cole*, 661 F.3d at 938. ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned.")

The ALJ's "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). As the Sixth Circuit has noted,

> [t]he conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of

giving greater weight to the treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id.* at 377.

A failure to follow these procedural requirements "denotes a lack of substantial evidence, even [when] the conclusion of the ALJ may be justified based on the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007).  The Sixth Circuit Court of Appeals "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned." *Cole*, 661 F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (alteration in original) (internal quotation marks omitted).

Regarding Dr. Kobaivanova's opinions, the ALJ stated:

In considering Dr. Kobaivanova's opinion, it is noted that as she is a treating source, 20 CFR 404.1527(a) and SSR 96-02p, provide that her opinion may be entitled to controlling weight, if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record.  It is noted that Dr. Kobaivanova has a longitudinal treatment history with the claimant, having seen her since 2013. (1F/2).  However, Dr. Kobaivanova [sic] opinion is not given controlling weight, as the degree of limitation opined is not consistent with the evidence as whole as it relates to the claimant's overall function and course of treatment.  Furthermore, she relies upon the functional evaluation of Ms. Soha for her opinion, and does not adequately consider her treatment records, the results of diagnostic imaging, or the refusal of the claimant to undergo epidural steroidal injection or surgery for her carpal tunnel syndrome.  For example, treatment notes from February 2016 show that the claimant was "well appearing, alert, and in no acute distress."  They also show the claimant denied joint pain or swelling, back pain, and muscle pain. (B14F/220).  Additionally, physical examination results showed the extremities had no deformities, edema, skin discoloration, clubbing or cyanosis.  There was good capillary refill and pulse was normal. Gait was normal and reflexes were normal and symmetric.  Sensation was grossly intact (B14F/221).  For the foregoing reasons, I give this opinion little weight.

(Tr. 24-25)

15

The ALJ's assigned little weight to the opinion of Dr. Kobaivanova based on her conclusion that the doctor's opinions were inconsistent with Collins's overall function and course of treatment.  In support of this finding, the ALJ stated that Dr. Kobaivanova relied on a functional report of Ms. Soha, and did not consider diagnostic imaging, her own treatment notes, or the fact that Collins did not want to undergo epidural steroidal injections or surgery for her carpal tunnel syndrome.  After making this finding, the ALJ was then required to point to "evidence in the case record, *** sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).  The ALJ failed to do this.

The ALJ assigned little weight to Dr. Kobaivanova's opinion.  She faulted Dr. Kobaivanova for citing Ms. Soha's functional report.  (Tr. 25)  However, in Dr. Kobaivanova's later opinion regarding Collins's physical residual functional capacity, she did not reference Ms. Soha's functional report.  (Tr. 457-458)  When asked what medical findings support her later opinion, Dr. Kobaivanova responded that Collins has neuropathy due to diabetes mellitus and carpal tunnel syndrome.  (Tr. 458)  Thus, contrary to the ALJ's conclusion, Dr. Kobaivanova did not base her opinion solely on the functional report from the physical therapist, Ms. Soha.

As for pointing to specific evidence in the record, the ALJ points to two pages of the record to support her finding that Dr. Kobaivanova's opinions were inconsistent with the record – (B14F/220 and 221 or Tr. 695 & 696).  (Tr. 25)  These pages are from Dr. Kobaivanova's February 29, 2016 treatment notes containing a general review of systems and physical examination notes.  For every category of the physical examination, the treatment notes state that Collins was normal.  Similarly, for review of systems, the treatment notes indicate that Collins was negative for all issues or had no history.  The ALJ used these notes to show that Collins was

"negative for joint pain or swelling, back pain, and muscle pain." (Tr. 695) However, earlier in these *same* treatment notes, Dr. Kobaivanova recorded that Collins was "complaining of a lot of pain in her joints. Stiffness and pain and crepitus with turning her neck. She takes Motrin and it helps for short period of time." (Tr. 694) These more specific observations at the outset of Dr. Kobaivanova's treatment notes contradict the review of systems and physical exam notes cited by the ALJ and suggest that the more general notes had probably not been updated for that visit.[5]

Dr. Kobaivanova's review of systems and physical examination notes seem to have never been revised to reflect Collins's ongoing visits and treatment. And these were the only records cited by the ALJ to support her finding that Dr. Kobaivanova's opinions were inconsistent with the record as a whole. Consequently, the ALJ failed to point to sufficiently specific evidence in the case record to make clear to any subsequent reviewers the reasons for assigning little weight to the opinions expressed by Collins's treating physician. The only portions of records she did point to were from one visit on February 29, 2016 which did not reflect Collins' complaints or the treatment she actually received that day.

The purpose of the "good reasons" requirement is two-fold. First, a sufficiently clear explanation, "lets the claimants understand the disposition of their cases," particularly when a

---

[5] Other treatment notes from Dr. Kobaivanova follow a similar pattern. For example, in January 2014, Collins went to Dr. Kobaivanova for a follow up visit. She reported neuropathic pain and that she had been taking ibuprofen almost every day. Collins also reported that she was having severe pain throughout the day related to her carpal tunnel syndrome. (Tr. 482) Yet, under the review of systems and physical examination portions of the treatment notes, Collins was noted as negative for all issues and normal in all areas of physical examination. As with subsequent visits, the review of Collins musculoskeletal system was noted as "negative for joint pain or swelling, back pain, and muscle pain." (Tr. 483)

On December 30, 2014, Collins presented to the same day clinic for worsening back, shoulder and neck pain. (Tr. 564) Nonetheless, under review of her musculoskeletal system, the treatment notes state "negative for joint pain or swelling, back pain or muscle pain." (Tr. 566) Thus, it appears that Dr. Kobaivanova and her associate providers were recording specific notes related to Collins's visits at the outset of their treatment notes but then consistently failed to update or modify the physical examination and review of systems sections in Collins's treatment notes.

claimant knows that her physician has deemed her disabled and therefore "might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Rogers,* 486 F.3d at 242 (quoting *Wilson* 378 F.3d at 544).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.  In this case, the ALJ failed to provide an adequate explanation for her handling of Dr. Kobaivanova's opinion.

In some circumstances, an ALJ's failure to articulate "good reasons" for rejecting a treating physician opinion is "harmless error."  This occurs when (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or (3) "the Commissioner has met the goal of § 1527(d) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation.  "*Wilson,* 378 F.3d at 547.  *See also Cole,* 661 F.3d at 940.  In the last of these circumstances, the procedural protections at the heart of the rule may be met when the "supportability" of the doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments.  *See Nelson v. Comm'r of Soc. Sec.,* 195 Fed. App'x 462, 470-471 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.,* 148 Fed. App'x 456, 464 (6th Cir. 2005); *Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010).  "If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend,* 375 Fed. App'x at 551.

Here, the ALJ's stated reasons for rejecting the opinion of Collins's treating physician are inadequate.  Moreover, the court cannot determine whether the ALJ fully considered the

elements contemplated by 20 C.F.R. § 416.927(c)(2)-(6) including whether the medical evidence in the record as a whole supported Dr. Kobaivanova's opinion.  For these reasons, the undersigned finds that the ALJ's failure to provide sufficiently specific "good reasons" for rejecting Dr. Kobaivanova's opinion regarding Collins's limitations was not harmless error. Even if good reasons existed to reject the treating physician's opinion, the ALJ failed to articulate those reasons with sufficient specificity to allow for meaningful review.  The Court should reject the ALJ's determination regarding the treating source opinion.

Had the ALJ assigned controlling weight to Dr. Kobaivanova's opinion instead of relying on the opinions from the state agency physicians, Collins's RFC determination would have been different.  I recommend remand so that the ALJ can properly evaluate Dr. Kobaivanova's opinion.

### 3. Credibility

Collins also argues that the ALJ did not properly assess her credibility.  ECF Doc. 17, Page ID# 862-863.  She contends that the ALJ's cited reasons do not weigh against her credibility.  For instance, the fact that Collins has not required hospitalization for her diabetic condition or undergone surgery for her carpal tunnel syndrome does not indicate that she is less than fully credible.  Collins also points to the ALJ's statement that Collins had not undergone an EMG study.  Collins actually *did* undergo an EMG study in 2010 but those medical records were not submitted to the commissioner until after the ALJ issued her decision.[6]

It is for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.

---

[6] As pointed out by the commissioner, when "the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify or reverse the ALJ's decision."  *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996).

1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).  However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility."  Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4.  Rather, such determinations must find support in the record.  Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record."  *Rogers v. Comm'r of Soc. Sec.* 486 F.3d 234, 247 (6th Cir. 2007).  The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record.  The consistency of the various items of information in the record must be scrutinized.  Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.  *Id.*

Social Security Ruling 96-7p also requires the ALJ to explain her credibility determinations such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.*  In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.  *Id.*

The ALJ determined that the Collins's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but she found the her statements concerning the intensity, persistence and limiting effects of these symptoms to be not entirely

20

consistent with the medical evidence and other evidence in the record.  (Tr. 20)  The ALJ noted that Collins had never been hospitalized for diabetes and that this condition had not resulted in any serious complications.  (Tr. 20)  She also noted that Collins had opted for conservative treatment for her carpal tunnel syndrome and rejected epidural steroidal injections and surgery for that condition.  (Tr. 21)  I agree with Collins that these facts do not undermine her credibility.  Collins did not claim that her diabetes was causing significant functional problems.  The fact that she had never been hospitalized did not counter any of Collins's statements about her daily activities.  Regarding her decision to avoid surgery, Collins explained that she did not want to undergo another surgery due to the difficult recovery she experienced following a different surgery.[7]  (Tr. 57-58, 482)  She also explained that there was no guarantee that the surgery would remedy her carpal tunnel syndrome.  (Tr. 57-58)

The ALJ also found that Collins's allegations regarding her limitations were inconsistent with some of her daily activities, such as buttoning, zipping, washing dishes, using a computer and caring for her four year old grandson.  (Tr. 23)  The ALJ pointed to medical records showing that Collins did not show up for one of her appointments.  The ALJ noted that Collins had stopped working due to a business related layoff rather than because of an allegedly disabling impairment.  (Tr. 23)  Some of the reasons cited by the ALJ seem to be unfair characterizations of the evidence in the record.  For example, Collins testified that she buttoning was very difficult.  (Tr. 65)  Also, when the ALJ stated that Collins was unemployed due to a business related layoff, she cited Collins's disability report.  (2E/2, Tr. 182)  In this report, Collins states that she stopped working "because of my condition(s)" and "because of other reasons."  She then

_____

[7] The commissioner argues that Collins did not tell her providers that she was reluctant to undergo another surgery due to her previous bad surgical experience.  ECF Doc. 19, Page ID# 885.  However, treatment notes from January 14, 2014 reflect that Collins told the doctor that she had a previous surgery to remove her kidney tumor in 1985 and was not ready for surgical decompression at this time.  (Tr. 482)

wrote that she was laid off because she filed for workers' compensation and because her work was too slow due to carpal tunnel syndrome in her hands.  (Tr. 182)  Thus, the ALJ's statement that Collins stopped working due to a business related layoff was not fully accurate.  Collins believed that she was laid off due to her conditions and because they were causing her to work at a slower pace.

Credibility assessments are for the ALJ and not the court.  Yet, in this case, some of the reasons the ALJ devalued Collins's credibility do not find support in the record.  I would not recommend remand on the basis of the ALJ's credibility finding alone.  Some of the reasons provided by the ALJ *do* support her credibility finding.  However, because some of the ALJ's reasons for discounting Collins's statements appear to be mischaracterizations of the record, I recommend that Collins's credibility be reevaluated on remand.  If the court follows my recommendation and remands the case due to the ALJ's failure to follow the treating physician rule, I also recommend the reevaluation of Collins's credibility.

### 4.    Misclassification of Past Work

Collins also contends that the ALJ erred in deciding that she could perform past work as a computer electronics assembler.  Collins argues that this decision is not supported by substantial evidence because the VE misclassified Collins's past work.  Collins does not cite any case law supporting this argument.  However, she points to the *Dictionary of Occupational Titles'* job description of computer electronics assembler[8] and represents that she did not perform some of the tasks listed in the description.  She states that she simply worked on an assembly line placing components including harnesses and cables into computers and other machines.  ECF Doc. 17, Page ID# 859-860.

---

[8] *Dictionary of Occupational Titles* 710.281-010.

The commissioner points out that Collins and her attorney had the opportunity to contest the VE's testimony at the hearing.  Collins's attorney cross-examined the vocational expert at the hearing but did not challenge the VE's testimony regarding the computer electronics assembler position.  The commissioner argues that it is inappropriate to question the reliability of the VE for the first time on appeal to the district court.  The commissioner also argues that even if the court agrees with Collins that the VE misclassified her past work, it was harmless error because the ALJ alternatively found that Collins could perform a significant number of other jobs as a counter clerk, theater usher, and office cleaner.

Although the job description for computer electronics assembler does not seem to be a perfect fit for Collins's past work, the undersigned agrees with the commissioner that Collins may not now challenge the VE's finding.  For the court to sustain Collins's argument, it would be required to accept, at face value, her unsupported representation that she did not perform some of the duties listed in this job description.  There is no evidence in the record on this point.  Moreover, because Collins's attorney did not raise this issue at the administrative hearing, the VE did not have an opportunity to clarify his opinion based on her challenge.  Thus, the court cannot consider the argument.  *See Sims v. Comm'r of Soc. Sec.,* 406 Fed. App'x 977, 982 (6th Cir. 2011).

I would not recommend that this case be remanded due to an alleged misclassification of Collins's past relevant work.  Having said that, the undersigned recommends that the court remand this case because the ALJ failed to provide good reasons for assigning little weight to the opinion of Collins's treating physician.  Collins's treating physician's opinions conflict with the ALJ's RFC determination.  Thus, a proper evaluation of Dr. Kobaivanova's opinion may result in a different residual functional capacity finding, which would render the alleged misclassification of Collins's past relevant work moot.

## VII.    Recommendation

Because the ALJ did not support her decision by substantial evidence, I recommend that the court VACATE the final decision of the commissioner and REMAND the matter for further proceedings, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

Dated: March 30, 2018

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).